**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SIDNEY-JAMES T. PIERCE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2222** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**MCHUGH, J.** **JULY 28, 2026**

*Pro Se* Plaintiff Sidney-James T. Pierce brings this civil action pursuant to 42 U.S.C. § 1983 against the City of Philadelphia, Mayor Cherelle Parker,[1] and four Philadelphia Police Department officers. The Court previously granted Pierce leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss the Amended Complaint[2] on statutory screening pursuant to 28 U.S.C. § 1915.

## I. FACTUAL ALLEGATIONS[3]

[1] Mr. Pierce incorrectly refers to the Mayor of Philadelphia as "Cheryl Parker." (Compl. at 1.)

[2] Mr. Pierce filed an initial Complaint (ECF No. 1) and subsequently filed an Amended Complaint (ECF No. 8) before the Court conducted its statutory screening under 28 U.S.C. § 1915. Pierce's Amended Complaint thus became the governing pleading in this case. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

[3] The facts set forth in this Memorandum are taken from Pierce's Amended Complaint (ECF No. 8). The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

Pierce alleges that while staying at a family member's residence between December 2023 and March 2025, he was the victim in multiple domestic incidents instigated by a female he refers to as "the aggressor" or "aggressor/ex." (ECF No. 8 at 6-9.) In each instance, after the woman behaved disruptively or destroyed Pierce's property, he called 911. (*Id.*) The police came in response to the first two incidents; on the third incident, Pierce called 911 five times but "dispatch disconnected every call." (*Id*. at 9.) Neither the woman nor Pierce was arrested or charged with any crimes as a result of the incidents. (*Id*. at 6-9.) However, Pierce asserts that Defendant Jane Doe,[4] a Philadelphia Police Department ("PPD") detective and the woman's cousin, coerced her into filing a false police report against Pierce alleging aggravated assault with a deadly weapon.[5] (*Id*. at 2, 9.) Pierce never received notice of the report, and he was able to pass security at the airport and various background checks in the subsequent months without issue. (*Id*. at 2, 9-10.) However, when Pierce applied for a federal TWIC[6] credential through the Transportation Security Administration he was issued a Preliminary Determination of Ineligibility stating that "Outstanding Criminal Wants or Warrants" were held by the PPD for aggravated assault with a deadly weapon. (*Id*. at 2, 10.) As a result of the failure to obtain the TWIC credential, Pierce asserts he lost out on a $128,000 "Texas oilfield contract." (*Id*. at 11.) He also states that he was denied a volunteer opportunity with Zoo Atlanta's animal-handling

---

[4] Pierce also refers to her occasionally as "Detective John Doe," but he appears to allege that this Defendant is female.

[5] Pierce refers throughout his narrative to various exhibits, but none are attached to the Amended Complaint. (*See generally* Am. Compl.)

[6] Pierce does not define the acronym. From the context of the Complaint, the Court infers that Pierce is referring to the Transportation Worker Identification Credential program. The credential "is required by the Maritime Transportation Security Act for workers who need access to secure areas of the nation's maritime facilities and vessels." *See* http://www.tsa.gov/twic/ (last viewed: July 6, 2026.)

program based on the same PPD records. (*Id*. at 11-12.) The latter issue has "made [Pierce] reasonably fear that any serious farm or animal-facility background check will pull the hidden 'Assault with a deadly weapon' [charge.]" (*Id*. at 12.) He states that he had planned to start "a small organic-farming and venomous-reptile business that he reasonably estimates could have reached approximately $300,000 in gross revenue by Year 3 if he could obtain the necessary placements, licenses, and leases." (*Id*.) However, he alleges that "the Philadelphia-only assault entry makes those prerequisites materially harder to obtain." (*Id*.)

Mr. Pierce contends that he has been injured by the false police database entry in an additional way. He "has been planning and organizing an Unincorporated Business Trust intended to hold future family assets and provide intergenerational security for his Offspring." (*Id*. at 15.) The eligibility criteria for the trustees and beneficiaries includes a requirement that they maintain a clean criminal record. (*Id*.) He acknowledges that "the trust is in its planning and early organizational stages and is not yet funded with substantial assets[.]" (*Id*. at 15-16.) However, Pierce's false assault with a deadly weapon entry "directly conflicts with the trust's clean-background requirement and, so long as it persists, effectively disqualifies [Pierce] from serving as a trustee or primary participant in the very wealth-protection structure he designed for his family." (*Id*. at 16.)

Mr. Pierce alleges that on or about March 31, 2025, he filed a complaint with PPD's Internal Affairs department, "describing trespasses, property destruction, assault, and officer misconduct in his domicile room, and Internal Affairs acknowledged opening a case but failed to correct the fabricated entry." (*Id*. at 2.) He also submitted a Right to Know Law request to the City of Philadelphia Office of Risk Management, requesting "records of the City's bonds and liability insurance policies covering police officers, including coverage terms, bond amounts, and

claim history, and expressly requesting a written explanation of any denial and appeal information[.]" (*Id*. at 2-3.) He states that the Office never responded to his request.[7] (*Id*. at 3.) Notably, Pierce does not claim that he was ever arrested as a result of the false database entry. He asserts that:

> The core injury in this case flows from the City of Philadelphia and its Police Department choosing to ignore [him] as the victim of repeated trespasses and destruction, siding with a detective's family member, and then allowing a fabricated assault entry to follow [Pierce] into every serious background check. It was Defendants' decisions—not the private relationship [with the aggressor]—that drove [Pierce] from his lawful basement dwelling, left him functionally homeless and unstable, and poisoned his ability to secure work, housing, and future opportunities despite his lack of disqualifying convictions.

(*Id*. at 13-14.) He contends that the City is liable under a *Monell* theory[8] because it maintained a "custom of fabricating or maintaining false police entries, ignoring citizen complaints, and refusing lawful transparency requests when those practices would expose municipal wrongdoing." (*Id*. at 3, 14.) In support of this claim he asserts that:

> In 2025, a Philadelphia judge vacated more than one hundred drug cases after prosecutors said they could no longer vouch for three narcotics officers whose testimony was found unreliable; subsequent coverage explained that the Officers had used the City's surveillance camera system to monitor alleged drug activity without disclosing that surveillance, and that video evidence contradicted the officers' claimed observations.

(*Id*. at 5-6.) He also alleges that, "[p]ublic reporting shows that the Philadelphia Police Department has a long history of corruption and serious misconduct, including documented

---

[7] A claim, if any, under Pennsylvania's Right-to-Know Law ("RTKL") would also fail to state a claim because "Section 1983 does not provide a cause of action for violations of state statutes." *See Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990); *see also* 63 Pa. C.S. § 3109(a)(1) ("All records under section 708(b)(17) of the Right-to-Know Law, relating to a noncriminal investigation . . . shall be confidential and privileged.").

[8] *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978).

scandals in which officers and supervisors engaged in bribery, theft, and abuse of authority." (*Id*. at 5.) He asserts, "[t]hese reports describe a department culture in which officers have repeatedly used their positions to harm the public and to protect one another from accountability." (*Id*.) These patterns of misconduct at PPD, Pierce contends, "make it entirely plausible that Defendants in this case would create and conceal a non-public 'phantom' database entry against [him], maintain that entry outside normal criminal charging procedures, and fail to correct it even as it continued to damage Plaintiff's work, housing, licensing, and family-wealth plans." (*Id*. at 6.) He also cites a June 22, 2025 incident, in which he asserts a 56-year old woman was stabbed to death in Philadelphia after she experienced significant delays in reaching 911, to argue that his inability to reach 911 during one of his domestic incidents is part of a larger municipal pattern. (*Id*. at 20.)

Based on the above allegations, Pierce asserts Fourteenth Amendment due process and equal protection claims, a § 1983 civil conspiracy claim, and a *Monell* claim against the City.[9] (*Id*. at 16-21.) He seeks injunctive relief, monetary damages, costs and attorney's fees.[10] (*Id*. at 21-23.)

---

[9] Mr. Pierce also references "Pennsylvania common law claims" in the jurisdiction section of his Amended Complaint, (Am. Compl. at 4), but no common law claims are asserted elsewhere in the pleading.

[10] Pierce also seeks a declaration that the Defendants have violated his rights. Declaratory relief is unavailable to adjudicate past conduct, so Pierce's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

## II. STANDARD OF REVIEW

Because Mr. Pierce is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in Pierce's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Pierce is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law,

irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

Mr. Pierce asserts constitutional claims against the Defendants. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining that § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

### A. Lack of Personal Involvement

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting

*Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Pierce states in the introduction to his Amended Complaint that "officers of the Philadelphia Police Department, aided by a relative detective, fabricated an 'Aggravated Assault with a Weapon entry against him," (Am. Compl. at 2), but later appears to allege that only his "ex" and Jane Doe were involved in filing the false report (*id*. at 9-10). Nonetheless, Pierce names Officers Cobbs and Simmons as Defendants, however they are barely mentioned in the narrative of the Amended Complaint. Pierce alleges that Cobbs and Simmons responded to his 911 call on March 24, 2025. (Am. Compl. at 8.) They are mentioned briefly in passing as having failed to provide him a police report number, but Pierce does not allege any facts suggesting these officers were involved in violating his constitutional rights.[11] Also, he states that an officer he refers to as Doe 4 "approached [the] aggressor" after one of the domestic incidents and "advised her to 'get [a] restraining order against [Pierce]'" (*id.*), but it is not clear

[11] The Court is aware of no authority suggesting that a citizen has a constitutional right to immediately receive a police report number at the scene of a police incident.

whether Doe 4 is one of the named Defendant officers since only Jane Doe 1 is listed in the caption and in the list of named Defendants. (Am. Compl. at 1, 4-5.) In any event, the allegation that Doe 4 suggested Pierce's ex file for a restraining order does not plausibly suggest a violation of his due process rights as he does not allege facts indicating the comment caused an injury to a liberty or property interest recognized by the Fourteenth Amendment. *See Iqbal*, 556 U.S. at 678 (requiring a plaintiff to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Smith v. Serv. Emps. Int'l Union, Loc. 668*, 566 F. Supp. 3d 251, 267 (M.D. Pa. 2021) (dismissing Fourteenth Amendment procedural and substantive due process claims because plaintiff did not allege injury to a protected property or liberty interest). Without any allegation that Defendants Cobbs and Simmons were personally involved in violating Pierce's rights, the claims against them are not plausible and will be dismissed.

**B. Fourteenth Amendment Procedural Due Process Claim**

Mr. Pierce alleges that "the Defendants" violated his due process rights under the Fourteenth Amendment by fabricating an assault with a deadly weapon charge, and "allowing that entry to be used to block [his] TWIC, contracts, housing, and licenses."[12] (Am. Compl. at

[12] Pierce refers frequently to the Defendants as a group rather than stating what each individual did to violate his rights. (*See, e.g.*, Am. Compl. at 16) ("By fabricating an 'assault with a deadly weapon' entry against Plaintiff . . . Defendants deprived Plaintiff of liberty and property interests without due process of law in violation of the Fourteenth Amendment."). Where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"); *Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (*per curiam*) (affirming district court's conclusion that generalized reference to "medical staff and officers" did not allege personal involvement). Pierce also does not specify whether he is alleging claims under the procedural and/or substantive aspects of the Due Process Clause, however the Court liberally construes him as asserting both.

16-17.) The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). For a property interest to be protected, a plaintiff must show "a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

A plaintiff may also assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)). To allege a plausible substantive due process claim, a plaintiff must first assert the particular interest at issue is protected by the substantive due process clause. *Doe v. N. Reg'l Police Dep't of Allegheny Cnty*., No. 24-2481, 2025 WL 1950065, at *3 (3d Cir. July 16, 2025) (citing *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ*., 587 F.3d 176, 190 (3d Cir. 2009). Further, this type of due process claim must allege governmental conduct that "'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). The United States Supreme Court explained that "the core of the concept" of due process is "protection against arbitrary action," *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), and that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense" *id*. at 846 (quotation omitted). Accordingly, in a substantive due

process challenge to an action taken by a government official, a plaintiff must allege that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. at 847 n.8; *see also United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003) ("[O]ur cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").

Mr. Pierce alleges that his due process rights were violated when the Defendants "fabricated" a police report that accused him of assault with a deadly weapon. However, "[t]he law is clear that there is no constitutional right to a correct police report."[13] *Thompson v. Howard*, No. 09-1416, 2013 WL 2338247, at *5 (W.D. Pa. May 29, 2013) citing *Jarrett v. Township Of Bensalem*, 312 F. App'x. 505, 507 (3d Cir. 2009); *see also Steinhardt v. Bernardsville Police Dep't*, No. 20-2825, 2021 WL 3929321, at *3 (3d Cir. Sept. 2, 2021) (affirming dismissal of plaintiff's § 1983 claim based on an inaccurate police report, because "she has no general federal right to an accurate or satisfactory police report, and she has not shown that the allegedly deficient investigation resulted in the deprivation of another federal right.") (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)). Thus, the allegation that Pierce's ex filed a false police report with encouragement from Jane Doe cannot be deemed conscience-shocking behavior and does not by itself state a plausible constitutional claim anyway.[14]

---

[13] The Court is also not aware of any authority suggesting that citizens have a right to accurate records in law enforcement databases.

[14] To the extent that Pierce alleges a due process claim against Defendant Clift based on his failure to sufficiently investigate his claims or to file charges against the other PPD Defendants, "[t]here is no constitutional right to a police investigation," *Whitehead v. City of*

Mr. Pierce asserts that he suffered various injuries as a result of the Defendants' actions, including that he (1) was forced to withdraw from an oil field contract worth $128,000 due to the failed TWIC background check; (2) did not pursue a potential organic farming and venomous reptile business; (3) was rendered homeless; and (4) suffered "long-term damage to his reputation and ability to contract." (Am. Compl. at 17.) However, these facts do not allege injury to a liberty or property interest triggering the protection of the Fourteenth Amendment.

Even assuming that Pierce had entered into a contract with the Texas oilfield contractor, and that the Defendants' actions forced him to withdraw from it, "a contract between private parties . . . rarely gives rise to a constitutionally protected property interest." *Saunders v. GFS Ent. Grp., LLC*, No. 16-1062, 2017 WL 5712312, at *2 (W.D. Pa. Nov. 28, 2017) (explaining that "[t]he one circumstance recognized by the Court of Appeals for the Third Circuit under which a private contract can give rise [to] a constitutionally protected property interest occurs when an employment contract provides for termination only upon cause and state action provides the cause for termination."); *see also Finley v. City of Philadelphia*, No. 11-1205, 2011 WL 3875371, at *4 (E.D. Pa. Aug. 31, 2011) ("The Third Circuit has repeatedly held that contract rights are among 'those state-created property interests' that are 'deemed unworthy of substantive due process' protection."). Thus, Pierce's allegation that he lost a business contract is insufficient to plead a property interest giving rise to either a procedural or substantive due process claim.

For similar reasons, Pierce's allegation that he lost the opportunity to pursue an organic farming and venomous reptile business and that he suffered "long-term damage to his reputation

*Phila.*, No. 13-2167, 2014 WL 657486, at *2 (E. D Pa. Feb. 19, 2014), and thus any claim based on Pierce's dissatisfaction with Clift's investigation is not plausible.

and ability to contract" do not plausibly allege the basis for a due process claim. *See Hunter v. S.E.C.*, 879 F. Supp. 494, 497 (E.D. Pa. 1995) ("Even the 'serious impairment of future employment prospects' or loss of business opportunities resulting from an injury to reputation does not elevate a tortious injury to constitutional dimensions." (quoting *Siegert v. Gilley*, 500 U.S. 226, 234 (1976)); *see also Hanna v. Avila*, No. 12-256, 2012 WL 1952175, at *3 (M.D. Pa. May 30, 2012) ("The only deprivation Plaintiffs have alleged here is the lost contract for the Capitol cafeteria, but the loss of a business opportunity" does not give rise to a "stigma-plus" Fourteenth Amendment due process claim).[15]

Finally, Mr. Pierce alleges that the Defendants' actions "drove [him] from his lawful basement dwelling [and] left him functionally homeless and unstable." (Am. Compl. at 13-14.) Beyond this vague and conclusory statement, Pierce does not allege facts plausibly suggesting a causal connection between any Defendants' actions and the loss of his housing. *See Iqbal*, 556 U.S. at 678 (requiring a plaintiff to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Nor does Pierce allege a property interest in the basement of his family's dwelling, such as a lease or a deed, that would give rise to due process protections. (*Id*. at 4.) Without more, these facts do not plausibly allege a basis for a Fourteenth Amendment due process claim.

**B. Fourteenth Amendment Equal Protection Claim**

Mr. Pierce also alleges a Fourteenth Amendment equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any

---

[15] Pierce's claim that he may not be eligible to serve as a trustee for the family trust that he is in the process of establishing is even more tenuous and circular and likewise fails to allege a property interest. For example, he appears to claim he will be the settlor of the future trust with control over its terms, but he fails to explain why he must impose terms that he himself would violate.

person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a plaintiff must allege "that he was treated differently than other similarly situated [individuals], and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Pierce alleges that, "Defendants denied Plaintiff equal protection of the laws by repeatedly favoring the aggressor, who was a family member of Detective John Doe 1, over Plaintiff, despite clear evidence that Plaintiff was the victim of trespass, destruction, and assault." (Am. Compl. at 17.) But Pierce's equal protection claims are not plausible because he fails to allege that he suffered discrimination based on a protected characteristic. To the extent that Pierce's allegations may be read as asserting a claim based on a "class of one" theory, he does not allege being treated differently than others similarly situated. *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"). Accordingly, Pierce's equal protection claim is not plausible and will be dismissed.

**C. § 1983 Civil Rights Conspiracy Claim**

Pierce also alleges that Defendant Jane Doe engaged in a conspiracy with his "ex" to violate his civil rights. The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). A plaintiff may plead the existence of an agreement by "demonstrat[ing] that the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights." *Id.* at 295 (quotation omitted) (cleaned up). As discussed above, Pierce does not allege a plausible violation of his Fourteenth Amendment due process or equal protection rights. Because he does not allege an underlying constitutional injury, Pierce's § 1983 conspiracy claim is not plausible and will be dismissed.[16] *See Wongus v. Corr. Emergency Response Team*, 389 F. Supp. 3d 294, 302 (E.D. Pa. 2019) ("To state a conspiracy claim, Plaintiff must have a claim of an underlying constitutional injury."); *see also Tarapchak v. Lackawanna County*, 173 F. Supp. 3d 57, 87 (M.D. Pa. 2016) (dismissing a § 1983 conspiracy claim due to the plaintiff's failure to plausibly allege an underlying constitutional violation).

[16] For the same reasons, Pierce's *Monell* claims against the City of Philadelphia are not plausible and will likewise be dismissed. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mr. Pierce leave to proceed *in forma pauperis* and dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Because Pierce fails to allege any injury to a liberty or property interest recognized by the Fourteenth Amendment, his due process claims will be dismissed with prejudice. In an abundance of caution, the Court will grant Pierce leave to amend his Fourteenth Amendment equal protection claims in the event he can allege a plausible claim under the standards discussed above. His § 1983 conspiracy and *Monell* claims will also be dismissed without prejudice. An appropriate Order with additional instructions as to amendment follows, which shall be entered separately. *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

**GERALD A. MCHUGH, J.**